COMMONWEALTH vs. EDWARD J. DIAS.

Bristol. January 9, 1995. - March 13, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Homicide. Felony-Murder Rule. Jury and Jurors. Practice, Criminal*, Instructions to jury, Jury and jurors, Verdict, Capital case.

At the trial of an indictment for murder in the first degree on the theory of felony murder, the judge adequately instructed the jury on the element of causation. [700]

The judge at a murder trial did not err in declining to poll the jury at defense counsel's request. [700-701]

Where the verdict in a murder case was received and recorded and no juror indicated a public disagreement, reasonably intelligible beyond the jury box, the verdict was unanimous; the judge correctly denied the defendant's motion for a new trial based on a claim that the verdict was not unanimous. [701-703]

INDICTMENT found and returned in the Superior Court Department on December 18, 1984.

The case was tried before *William H. Carey*, J., and a motion for a new trial was heard by him.

*Richard M. Passalacqua* for the defendant.

*Cynthia A. Vincent*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. On November 9, 1991, a jury convicted the defendant of murder in the first degree on the theory of felony-murder.[1] The defendant has appealed from his convic-

---

[1] The previous day, the same jury had convicted on an indictment charging the defendant with burglary and armed assault on an occupant. None of the issues in this appeal concerns that conviction. The defendant does not argue that that conviction should be reversed.

This was the second trial of the defendant on the charge of murder in the first degree. The earlier conviction was reversed. See *Commonwealth* v. *Dias*, 405 Mass. 131 (1989).

tion and argues further that the judge erred in denying his motion for a new trial because, as he claims, the jury verdict was not unanimous. After explaining that the judge's instructions on the theory of felony-murder were adequate and that he did not abuse his discretion in declining to poll the jury, we discuss the principal issue in this case, whether the judge erred in ruling that the jury's verdict was unanimous. We conclude that the verdict was unanimous, and that the defendant is not entitled to relief under G. L. c. 278, § 33E (1992 ed.). We affirm the conviction.

A brief statement of the evidence will suffice. See *Commonwealth* v. *Dias*, 405 Mass. 131, 133-134 (1989), for a fuller description. There was evidence that the victim had been stabbed to death in his home in Dighton. After the police arrested the defendant, he gave them an incriminating, videotaped statement that was shown to the jury. In that statement the defendant said that he and a John Dias forced their way into the victim's house, that the victim recognized them, and that the defendant stabbed the victim three times. The defendant and Dias fled, waited two hours, returned to the victim's house, found him dead, and took a television set, some coins, and the victim's truck.

The jury began deliberating shortly after noon on a Thursday. About 2 P.M. that day, the judge, at the jury's request, again instructed the jury on various matters, including felony-murder. The jury resumed deliberations on Friday and, in the early evening, returned a verdict on the burglary and armed assault indictment. At 10:08 A.M. on Saturday, after the judge had instructed the jury further concerning felony-murder at defense counsel's request, the jury returned a verdict of guilty of murder in the first degree on the theory of felony-murder. The judge declined defense counsel's motion to poll the jury. We defer recounting the circumstances of the taking of the verdict and the challenge to its unanimity until we discuss the defendant's appeal from the denial of his motion for a new trial. We turn first to the issues raised by the appeal from the conviction of murder in the first degree.

1. The defendant challenges an aspect of the judge's instructions on felony-murder. Specifically, he asserts that the judge failed to tell the jury that the defendant could be guilty on this theory only if he actually or constructively killed the victim. The defendant did not object to the judge's instructions on felony-murder at trial.

The judge told the jury that to find the defendant guilty of murder in the first degree on the felony-murder theory the killing had to be unlawful. Somewhat earlier, he had explained that an unlawful killing involved the causing of a death that occurs "as the result of the defendant's acts," and that the Commonwealth must prove "that the defendant unlawfully killed the victim." In supplemental instructions, given at the defendant's request, the judge told the jury that an unlawful killing caused by the defendant, and committed in the commission or attempted commission of a burglary or armed assault in a dwelling, is murder in the first degree if proved beyond a reasonable doubt.

The jury were adequately instructed on the element of causation. Judges can make the causation element of felony-murder clear by following, or paraphrasing, what this court has said: "No person can be held guilty of homicide [on the theory of felony-murder] unless the act is either actually or constructively his, and it cannot be his act in either sense unless committed by his own hand or by someone acting in concert with him or in furtherance of a common object or purpose." *Commonwealth* v. *Burrell*, 389 Mass. 804, 807-808 (1983), quoting *Commonwealth* v. *Balliro*, 349 Mass. 505, 513 (1965), quoting *Commonwealth* v. *Campbell*, 7 Allen 541, 544 (1863).[2]

2. The judge did not err in declining defense counsel's request to poll the jury. Defense counsel advanced no special reason for his request, and later indicated that he had not seen or heard anything that prompted his motion. The matter

---

[2]The case was not submitted to the jury on the theory of joint venture. The judge was, therefore, correct in the circumstances in saying that the Commonwealth had to prove that the defendant (and hence not his accomplice) caused the victim's death.

lay within the judge's discretion. See Mass. R. Crim. P. 27 (d), 378 Mass. 897-898 (1979) ("[T]he jury may be polled in the discretion of the judge").[3]

It would be better practice, however, to poll the jury on request in cases in which the jury's deliberations have been lengthy or the trial has been long. If the judge elects not to poll the jurors individually, the judge could ask for a show of hands. See *Commonwealth* v. *Jenkins*, 416 Mass. 736, 741 (1994).

3. The jury's verdict was apparently unanimous,[4] and any juror's inadequately disclosed, subjective disagreement with the verdict as announced cannot be the basis for vacating it

---

[3]Our rule differs in this respect from rule 31 (d) of the Federal Rules of Criminal Procedure which provides for a poll of the jury at the request of any party or on the judge's own motion. See *Government of the V.I.* v. *Hercules*, 875 F.2d 414, 417-418 (3d Cir. 1989). Cf. *Commonwealth* v. *Costley*, 118 Mass. 1, 28 (1875) ("In Massachusetts, it has never been the right of a party, in any case, civil or criminal, to have the jury polled. The affirmance of the verdict by the whole jury in the usual manner, upon its being read to them in form by the clerk, with the opportunity of open dissent thereby afforded to each juror, has been deemed sufficient security that the verdict thus affirmed expresses the unanimous decision of the jury").

[4]The transcript of the jury's return of their verdict follows the standard format:

THE COURT: "You may inquire."

THE CLERK: "Mr. Foreman, have you and all members of the jury agreed upon your verdict?"

THE FOREMAN: "Yes, we have."

THE CLERK: "Please return the verdict papers to the court officer."

(Brief pause.)

THE COURT: "All right. Very well. You can announce that verdict."

THE CLERK: "What say you, Mr. Foreman, as to Indictment No. 15501, wherein the defendant, Edward J. Dias, is charged with the crime of murder in the first degree? Is he guilty or not guilty?"

THE FOREMAN: "Guilty."

THE CLERK: "Guilty of what?"

THE FOREMAN: "Felony murder."

THE CLERK: "Members of the jury, harken to your verdict as the Court has so recorded it.

"You upon your oaths do say the defendant is guilty on Indictment No. 15501.

"So say you, Mr. Foreman, so say you all, members of the jury?"

THE JURY: "Yes."

and granting a new trial. Each juror had an opportunity to object to the verdict when it was announced in open court, and no juror objected in a way that we accept as effective.

Shortly after the judge had discharged the jurors and the court had adjourned, the chief court officer brought a juror to the judge's lobby because the juror had told the chief court officer that she had not agreed with the verdict. The juror told the judge in a transcribed interview that she had been badgered by other jurors into agreeing on a guilty verdict, that she had reluctantly raised her hand in the jury room in support of a finding of guilt, but then immediately she had said that she could not agree. Other jurors said it was too late, and that, when the verdict was announced, she could give her answer. The juror said she shook her head and said "no" in a low voice when asked in open court if she agreed with the announced verdict. She did not think the judge would have heard her.

The judge thereafter conducted posttrial interviews of all the remaining deliberating jurors, the court officers, the clerk of the court, and any personnel who had knowledge about the rendition of the verdict in this case. He found that the complaining juror had been a lone dissenting juror but nevertheless ultimately had agreed to the verdict in the jury room before the verdict slip was signed. The juror had been visibly upset when the verdict was returned, a circumstance the judge stated was not unusual when returning a guilty verdict in a murder case and a circumstance that, in the judge's view, did not indicate a lack of agreement with the verdict. The judge further found: "If the complaining juror did whisper a dissent, the court, any court official and the jurors in her immediate vicinity did not hear it. If the complaining juror did shake her head, this court did not observe her doing so. Moreover, the shaking of her head would have been a neutral gesture subject to many interpretations other than a disagreement with the verdict." He concluded "that there was no demonstrable conduct by the complaining juror which indicated to the court her lack of agreement, if there was any, with the verdict as announced by the foreman."

When a verdict is received and recorded, and the jurors indicate their concurrence by affirming the verdict in open court, neither a juror's change of heart nor a juror's subsequent disclosure of a subjective disagreement with her apparent vote provides a basis for vacating the verdict. See *Commonwealth* v. *Martell*, 407 Mass. 288, 294 (1990); *A Juvenile* v. *Commonwealth*, 392 Mass. 52, 57 (1984). If, however, a juror indicates a public disagreement with the verdict as announced, the verdict is not unanimous, and it should not be recorded. If it has been recorded, the judge should set it aside. See *Commonwealth* v. *Nettis*, 418 Mass. 715, 718-719 (1994); *Rich* v. *Finley*, 325 Mass. 99, 105-106 (1949); *Lawrence* v. *Stearns*, 11 Pick. 501, 502 (1831). A whispered "no" cannot qualify as a public disagreement with an announced verdict. The disagreement must be reasonably intelligible beyond the jury box. In this case, the judge, the clerk, and defense counsel, among others, neither saw nor heard dissent from any juror. The judge was warranted in finding that the complaining juror at no time expressed any change of vote "in any discernible or objective manner."[5]

The judge did not err in denying the motion for a new trial. We add that problems such as the one that arose in this case can be eliminated by obtaining a clear sign of each juror's assent to the announced verdict, by polling the jurors or otherwise.

4. There is no basis for granting relief under G. L. c. 278, § 33E.

*Judgments affirmed.*

---

[5]The judge did not discuss or (for some reason) credit the testimony of two jurors who testified that they heard a "no," which they assumed to have come from the complaining juror. The other jurors did not hear any dissent. Even if two jurors heard a "no," there was no manifestation of disagreement beyond the jury box.